THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                    No. Cr. 19-4445 JH

ANDRE DESHAWN COLEMAN
and ZAVIER MALIK JETER,

      Defendants.

## MEMORANDUM OPINION AND ORDER

On March 4, 2020, Defendant Andre Coleman ("Defendant" or "Coleman") filed an Amended Opposed Motion for a Severance of Defendant (ECF No. 42).[1] Defendant requests a severance and separate trial from his co-defendant Zavier Jeter ("Jeter") based on Federal Rule of Criminal Procedure 14, the Sixth Amendment, and *Bruton v. United States*, 391 U.S. 123 (1968). The Government opposes the motion. The Court, having considered the motion, briefs, evidence, and applicable law, concludes that the amended motion to sever should be denied.

## I.    BACKGROUND

According to the Criminal Complaint, this case arises from the November 19, 2019 arrests of Defendants Coleman and Jeter at the Gallup Port of Entry after an inspection of the tractor trailer they were driving and co-driving, respectively, revealed pallets of marijuana in the trailer. *See* Criminal Compl., ECF No. 1. The United States asserts that the marijuana was found among

---

[1] Defendant Coleman amended his initial Motion for Severance of Defendant (ECF No. 41) to include opposing counsel's position. *Compare* Def.'s Mot., ECF No. 41, *with* Def.'s Am. Mot. 1 n.1, ECF No. 42. The Court will thus deny as moot Defendant's motion for severance (ECF No. 41) and will consider herein the arguments in Defendant's amended motion for severance (ECF No. 42).

apparently legitimate shipments. *See* Gov.'s Resp. 2, ECF No. 47. A federal grand jury charged Defendants with conspiracy to distribute 1,000 kilograms and more of a mixture and substance containing a detectable amount of marijuana from on or about November 17, 2019 and continuing to on or about November 19, 2019, in violation of 21 U.S.C. § 846 (Count 1), and with possession with intent to distribute 1,000 kilograms and more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2 (Count 2). Indictment, ECF No. 19.

Both Defendants made statements to law enforcement following their arrests and after officers gave them *Miranda* warnings. *See* Criminal Compl. 5, ECF No. 1. Coleman asserts that seven of Jeter's statements are somewhat contradictory from his own and that their admission would violate Coleman's Sixth Amendment Confrontation Clause rights. Coleman argues that the Court must thus sever the trials. In response, the Government contends that the identified statements do not raise *Bruton* concerns, and that even if they do, the statements may be redacted to avoid causing undue prejudice and to avoid violating any specific trial rights of Coleman.

The following statements are those identified by Coleman as creating Confrontation Clause issues:

A. Coleman denied knowing the owner of the trucking company, VinJet Logistics, stating he had been driving for VinJet Logistics on and off for two years; he had never met face-to-face the owner, who he knew only as Mr. Jeter; and he had only spoken to the owner telephonically. Jeter told officers his father, the owner of VinJet Logistics, and Coleman worked together in the oil fields in Texas and drove trucks in Laredo, Texas.

B. Coleman stated that, after dropping off the tractor trailer at the 49er Truck Stop near Sacramento on Friday, November 15, 2019, he rented a car from Enterprise Rentals to "hang out" with friends and family until Monday afternoon, and he did not spend any

time with Jeter or see him over the weekend. Jeter, however, said that Coleman spent the entire weekend with Jeter and his girlfriend at an Airbnb in Sacramento and that Coleman stayed in the house the entire weekend.

C.  Coleman admitted to having a criminal record that included a conviction for possession and sale of cocaine. After agents informed Jeter that Coleman had a long criminal record, Jeter said that Coleman might have known about the marijuana in the trailer.

D.  After agents showed Jeter a bill of lading receipt bearing his signatures and informed him that the containers referenced in that document contained marijuana, Jeter stated he signed the receipt "since Andre didn't sign 1 or 2" of the receipts.

E.  Jeter said that he only signed the bill of lading "for him." Coleman, in contrast, stated that he was not involved in the "last load," referring to the container in which marijuana was found.

F.  Jeter explained that he was asleep in the truck's sleeper area when Coleman "picked up the U-Haul boxes," referring to the boxes containing marijuana, on November 18, 2019. He said when he awakened later to begin his driving shift, he discovered through a driver inspection that the trailer had a seal, and Coleman had not "signed" the bill of lading for this last load, so Jeter had to sign it to be able to drive the tractor trailer. Coleman, however, said that he returned to the 49er Truck Stop on November 18, 2019, to meet Jeter for the return trip and Coleman observed that the trailer had been loaded and a seal placed on the trailer – "already loaded and sealed."

G.  Jeter claimed that both he and Coleman would transport cargo to South Carolina and Jeter would not "drop-off" Coleman in Atlanta. Coleman said that he was going to be "dropped off" in Atlanta by Jeter rather than participating in the transportation of the

cargo to South Carolina.

## II.    STANDARD

Federal Rule of Criminal Procedure 8(b) provides that two or more defendants may be tried jointly "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b). "Joint trials of defendants who are indicted together are preferred because '[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *United States v. Hall*, 473 F.3d 1295, 1301-02 (10th Cir. 2007) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)). The Tenth Circuit recognizes "a presumption that co-conspirators in a conspiracy trial should be tried together." *United States v. Clark*, 717 F.3d 790, 817 (10th Cir. 2013).

A court, however, may order separate trials if the joinder of defendants appears to prejudice a defendant. Fed. R. Crim. P. 14(a). The decision whether to grant a severance is within the discretion of the trial court. *United States v. Dirden*, 38 F.3d 1131, 1140 (10th Cir. 1994). In exercising its discretion, a court "must weigh prejudice to the defendant caused by joinder against the 'obviously important considerations of economy and expedition in judicial administration.'" *Id.* (quoting *United States v. Petersen*, 611 F.2d 1313, 1331 (10th Cir. 1979)). "[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540.  Rather, "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

The defendant bears a heavy burden of showing real prejudice in his case to warrant severance. *See United States v. Wardell*, 591 F.3d 1279, 1299 (10th Cir. 2009). Limiting

instructions often will cure any risk of prejudice. *Zafiro*, 506 U.S. at 539. A court should consider other remedial measures that will minimize the risk of prejudice. *United States v. Lane*, 883 F.2d 1484, 1498 (10th Cir. 1989).

### III.   ANALYSIS

#### A.  *Bruton*

The Confrontation Clause of the Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him…." U.S. Const., amend. VI. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the admission of testimonial statements of a witness who did not appear at trial violates the Confrontation Clause, unless the witness was unavailable to testify and the defendant had a prior opportunity for cross-examination. *See id.* at 68. Police interrogations are testimonial statements. *Id.* Consequently, a defendant's Confrontation Clause rights are violated when his non-testifying co-defendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider the confession only against the co-defendant. *Richardson v. Marsh*, 481 U.S. 200, 201-02 (1987) (relying on *Bruton v. United States*, 391 U.S. 123 (1968)).

Where, however, a confession is not facially incriminating and becomes so only when linked with evidence later introduced at trial, there is not the overwhelming probability that jurors will be unable to obey an instruction that they disregard an incriminating inference. *See id.* at 208. A non-testifying co-defendant's confession is properly redacted if it eliminates any reference to the defendant's name and to his existence, and thus, may be admitted so long as the court also gives a proper limiting instruction. *See id.* at 211. The admission of such a statement is constitutional even when other evidence otherwise links the defendant to the statement. *See id.* at 208-11. The Tenth Circuit has held that "where a defendant's name is replaced with a neutral

pronoun or phrase there is no *Bruton* violation, providing that the incrimination of the defendant is only by reference to evidence other than the redacted statement and a limiting instruction is given to the jury." *United States v. Verduzco-Martinez*, 186 F.3d 1208, 1214 (10th Cir. 1999). If, however, it is obvious from consideration of the confession as a whole that the redacted term refers to the defendant, then the Confrontation Clause problem remains. *See id.*

*Bruton* problems alone do not require severance. *Spears v. Mullin*, 343 F.3d 1215, 1235 (10th Cir. 2003). "*Bruton* only requires that in a joint trial a defendant must be given an opportunity to cross-examine his codefendant when the government introduces a codefendant's confession that incriminates the defendant." *United States v. Hill*, 901 F.2d 880, 883 (10th Cir. 1990). Where a *Bruton* situation exists, the court may protect the defendant's Sixth Amendment rights by (1) excluding the confession, (2) severing the trial, or (3) redacting the portions of the co-defendant's confession that incriminate the non-confessing defendant coupled with the use of limiting instructions. *See id.*; *Stanford v. Parker*, 266 F.3d 442, 456 (6th Cir. 2001). It is up to the court to decide whether the risk of prejudice arising from *Bruton* issues is high enough to warrant severance. *See Zafiro*, 506 U.S. at 539 (expressly cautioning that risk of prejudice warranting severance could occur where *Bruton* issues arise).

As an initial matter, the United States is not seeking to use statement C. Gov.'s Resp. 5, ECF No. 47. Because it has not yet determined whether it will seek admission of statements A-B and D-G and it is not clear whether Jeter may testify at trial, the United States argues that the drastic remedy of severance is premature. Additionally, turning to statements A, B, and G, the Government argues that the statements are not facially incriminating: statement A relates to whether Coleman and Jeter's father knew each other; statement B is about whether Coleman and Jeter spent time together the weekend prior to their trip; and statement G concerns whether

Coleman would go to South Carolina or be dropped off in Atlanta.

The *Bruton* rule is a narrow exception to the general rule that jurors are presumed to follow their instructions, and it "applies only in those few contexts where the statement is so inculpatory as to the defendant that the 'practical and human limitations of the jury system cannot be ignored.'" *United States v. Sarracino*, 340 F.3d 1148, 1160 (10th Cir. 2003) (quoting *United States v. Rahseparian*, 231 F.3d 1267, 1277 (10th Cir.2000)). The "*Bruton* rule does not apply to 'statements that are not directly inculpatory but only inferentially incriminating.'" *Id.* (quoting *Rahseparian*, 231 F.3d at 1277)). *Bruton*, however, applies, even if the statement is not facially inculpatory, when the statement is evidence of a fact critical to the government's case. *Id.*

Applying this law to the facts here, the Court concludes that statements A, B, and G are not directly inculpatory. Nor is it clear whether statements A, B, and G refer to facts that are critical to the United States' case. Coleman has thus not convinced the Court that *Bruton* applies to these statements and that limiting instructions cannot be given to cure any prejudice.[2] In addition, the Government notes, and the Court agrees, that statement B could be redacted to say that Jeter and his girlfriend stayed the weekend at an Airbnb without reference to Coleman.

Moreover, it is not clear yet whether the Government intends to use Jeter's statements to prove the truth of the matter asserted or only to demonstrate that the co-defendants told inconsistent stories. "A defendant's confrontation rights are implicated by the admission of testimonial statements against the defendant, however, only when they are admitted to establish the truth of the matter asserted in the statement." *United States v. Pablo*, 696 F.3d 1280, 1287 (10th Cir. 2012) (relying on *Crawford*, 541 U.S. at 60 n. 9, which noted that Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter

---

[2] The Court does not herein rule that the statements will be admitted into evidence; only that there is no *Bruton* issue requiring severance as the remedy.

asserted"). If the Government introduces statements A, B, and G, not to establish the truth of what Jeter said, but merely, to show that the co-defendants told different stories, then the Confrontation Clause is not implicated by the admission of these statements.

With respect to statements D, E, and F, Coleman asserts that the statements imply that he was the one who was supposed to sign for the containers. The Government asserts that the referenced bill of lading relates to an apparently legitimate U-Haul shipment, and the marijuana was located on both sides of the crate associated with the referenced bill of lading. Although the United States contends that the signing of the bill of lading is relevant because it shows involvement and knowledge of the contents of the trailer in general, it asserts that the statements are not facially incriminating, so *Bruton* does not apply.

The Court agrees that statements D and E do not compel severance because they are not directly incriminating and, to the extent the statements constitute facts critical to the government's case, they can be redacted to avoid references to Coleman. Statement F, however, is not as easily redacted. Jeter stated that he was asleep when Coleman picked up the U-Haul boxes and he later discovered at a driver inspection that the trailer had a seal, but Coleman had not signed the bill of lading, so Jeter had to do it. The United States argues that the statement is not directly incriminating because Jeter did not say he saw Coleman pick up the load and that load does not directly relate to the drugs in the trailer. Although the U-Haul crate may not have contained the contraband, the United States intends to show at trial that "the position of the crate for which Jeter signed suggests that it was loaded at a time when there was already marijuana in the trailer, or that the crate was later moved when the marijuana was loaded, further demonstrating knowledge that the trailer contained marijuana." Gov.'s Resp. 5, ECF No. 47. This statement by Jeter is therefore an attempt to implicate Coleman, on which Coleman may not have the opportunity to cross-examine Jeter,

depending on whether Jeter chooses to testify. Although the Court has Sixth Amendment concerns about the introduction into evidence of statement F, the Government indicates its preference is to not use the testimony, rather than have two separate trials. *See* Gov.'s Resp. 7-8, ECF No. 47 ("Finally, to the extent that suitable redactions are not available in the Court's estimation, the United States can simply choose not to use the statement in preference to a complete severance of the two trials.").

In sum, the Court has other remedies, such as redaction and exclusion, to protect Coleman's rights without resorting to severance. The Court therefore concludes that *Bruton* does not mandate severance under the circumstances here.

### B. Spillover Prejudice

Evidence admissible against a co-defendant that would not be admissible against the defendant if he were tried alone may create a serious risk of prejudice sufficient to require severance. *See Zafiro*, 506 U.S. at 539. "For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty." *Id.*  A mere allegation that the evidence against one defendant will have a "spillover effect" on a co-defendant is not enough to demonstrate prejudice. *Clark*, 717 F.3d at 818. Prejudice is also not shown when the evidence would be admissible at separate trials. *See United States v. Lane*, 883 F.2d 1484, 1498 (10th Cir. 1989) ("If all the evidence in a joint trial of defendants was admitted against each codefendant, no such prejudice could result from the joint trial because the evidence would be precisely as it would at each defendant's separate trial.").

In this case, a properly instructed jury will be able to weigh the evidence against Coleman separately to determine his culpability in the charged crime. The cases against each co-defendant are similar – they are charged in the same conspiracy and both are alleged to have driven the tractor

trailer containing the marijuana. Coleman asserts that the evidence against Jeter is stronger because Jeter admitted via text that he was aware the trailer contained "weed." Even assuming Coleman's position is correct and the evidence against him is weaker than the evidence against Jeter, the disparity in evidence is insufficient to warrant a severance. Nor is the Court convinced that a jury would not be able to compartmentalize the evidence against each defendant. The record does not indicate that the evidence disparity would prevent the jury from making a reliable judgment about the guilt or innocence of Coleman, separate from Jeter. *Cf. United States v. Linn*, 31 F.3d 987, 992-93 (10th Cir. 1994) ("Here, we have a simple conspiracy case involving a few actors and a straightforward set of events; complexity and confusion are not a concern. The concerns justifying severance based upon differing degrees of culpability are simply not present in this case.").[3]

### C. Inconsistent Defenses

To establish that trials must be severed based on the mutually antagonistic defense theory, the conflict between the co-defendants' defenses must be such that the jury, to believe the core of one defense, "must necessarily disbelieve the core of the other." *Id.* at 992 (quotations omitted). The Tenth Circuit requires a three-step inquiry to determine whether a defendant will be prejudiced by a joint trial because he and a co-defendant have mutually exclusive defenses: (1) whether the defenses are so antagonistic as to be mutually exclusive; (2) whether there is a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable determination of guilt or innocence; and (3) if a defendant shows the first two factors, the trial court must weigh the prejudice to a particular defendant caused by joinder against considerations of economy and speed in judicial administration. *United States v. Jones*, 530 F.3d 1292, 1304 (10th Cir. 2008).

---

[3] The Court finds the cases upon which Defendant relies readily distinguishable, and the *Linn* case far more persuasive.

Coleman has not demonstrated that a jury, in order to believe the core of his own defense, must *necessarily* disbelieve the core of Jeter's defense. Both defendants appear to claim that they had no knowledge of the marijuana in the truck. Although there are suggestions of finger pointing in their respective statements, the defenses are not so contradictory that the jury must disbelieve one to believe the other. For example, a jury could determine that neither defendant knew the contraband was in the truck. Consequently, the respective defenses of Coleman and Jeter do not compel severance. *Cf. id.* ("Mr. Wright's guilt was not, in itself, a viable legal defense for Ms. Jones, and it was not an indispensable component of her theory of the case. Indeed, the 'core' of Ms. Jones's defense-that she did not act knowingly or voluntarily with respect to any of the alleged acts-did not necessarily depend on Mr. Wright's guilt…. In our view, the jury could have simultaneously believed that the government's witnesses were lying about Mr. Wright's involvement in the bank fraud conspiracy and that Ms. Jones did not knowingly commit bank fraud."); *Linn*, 31 F.3d at 992 (explaining that mutual antagonism complained of by defendants was no more than finger pointing from which jury could have believed all of defendants' theories and acquitted all of them, so denial of severance did not require reversal). Moreover, as explained *supra*, no specific trial right of Coleman's will be compromised by a joint trial.

Finally, the risk of prejudice is outweighed by the interests of judicial economy. It appears that much of the evidence and witnesses against each co-defendant will be the same. Separate trials thus will be highly duplicative and a waste of judicial resources. *Cf. Hall*, 473 F.3d at 1302 (concluding that district court did not abuse its discretion in denying defendant's motion to sever where joint trial was in interests of judicial economy because exact same witnesses and exhibits would be necessary in both trials).

**IT IS THEREFORE ORDERED** that Defendant Coleman's Motion for a Severance of Defendant (**ECF No. 41**) is **DENIED AS MOOT** and Defendant Coleman's Amended Opposed Motion for a Severance of Defendant (**ECF No. 42**) is **DENIED**.

**SENIOR UNITED STATES DISTRICT JUDGE**